914 So.2d 729 (2005)
Charles LaFayette MAGEE, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02358-COA.
Court of Appeals of Mississippi.
June 21, 2005.
Rehearing Denied October 11, 2005.
*731 Ross Parker Simons, attorney for appellant.
Office of the Attorney General by W. Daniel Hinchcliff, attorney for appellee.
Before KING, C.J., CHANDLER and BARNES, JJ.
CHANDLER, J., for the Court.
¶ 1. After a jury trial, Charles Lafayette Magee was found guilty of murder and sentenced to life in the custody of the Mississippi Department of Corrections. Magee appeals, and raises three assignments of error: (1) whether trial counsel's confusion of the issues of competency and sanity constituted ineffective assistance of counsel; (2) whether the trial court committed reversible error by failing to order a hearing to determine Magee's competence to stand trial; and (3) whether the earned time provision of Mississippi Code Annotated section 47-5-139(1)(a) violates Magee's rights to due process and equal protection of the law.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On June 1, 2000, the body of Delia Shambach was found in Nine Miles Lake under the Old Stage Road bridge in Jackson County. An autopsy showed that the cause of Shambach's death was drowning. Investigators with the Jackson County *732 Sheriff's Department discovered that, on the night of May 30, 2000, Shambach had left the Miss-A-Bama bar in the company of Magee. Magee had told another bar patron that he was going to drive Shambach home. The investigators brought Magee to the sheriff's department for questioning.
¶ 4. After waiving his rights, Magee confessed to having thrown Shambach off the bridge. Magee stated that he and Shambach had become acquainted at the bar and left the bar together in his van. Magee drove to the bridge on Old Stage Road and parked. Shambach offered Magee sex in exchange for a sum of money, and he balked at the price. She slapped him on the shoulder. Magee became angry and exited the van; Shambach followed. Shambach approached Magee and he punched her in the face. Shambach fell down and her head struck the railing of the bridge. Magee lifted Shambach off the ground and threw her over the railing. He waited a few minutes and then returned to the bar.
¶ 5. Before the trial, Magee served notice upon the State of his intent to rely on the defense of insanity. The trial began on September 2, 2003 and ended on September 4, 2003. When the State rested, Magee declined to put on any evidence, thus withdrawing his insanity defense. The jury was instructed on murder and manslaughter, and returned a verdict finding Magee guilty of murder.

LAW AND ANALYSIS

I. TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE AS HE DID NOT KNOW THE DIFFERENCE BETWEEN A PRE-TRIAL COMPETENCY HEARING AND AN AFFIRMATIVE DEFENSE OF INSANITY.
¶ 6. On May 3, 2001, Magee's first trial counsel moved for funds to have Magee evaluated for his competence to stand trial, and the motion was granted. Apparently, no competency evaluation was performed pursuant to the court order. Due to a conflict of interest, on July 25, 2001, Magee's first trial counsel withdrew from the case. The court appointed substitute counsel five days later.
¶ 7. Magee, with new appellate counsel, argues that his substitute counsel's performance was deficient because counsel confused Magee's affirmative defense that he was insane at the time of the crime with the issue of Magee's competence to stand trial. Magee argues that this error prejudiced him because, had substitute counsel not confused these issues, counsel would have obtained a mental examination evaluating Magee's competence. Along with his brief, Magee has submitted extra-record documents to support his contentions that he was incompetent to stand trial and that his counsel was deficient for failing to have Magee examined for competence.
¶ 8. The case of Read v. State, 430 So.2d 832, 841 (Miss.1983), established that a convicted criminal is permitted to raise the issue of ineffective assistance of counsel on direct appeal. When this issue is raised, this Court's review is strictly limited to the appellate record. Id. We may determine the merits of the claim only when "(a) ... the record affirmatively shows ineffectiveness of constitutional dimensions, or (b) the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc. are not needed." Id. If these two conditions are unmet, this Court should review the other issues in the case; if we otherwise affirm the conviction, we should do so without prejudice to the defendant's right to raise the issue of ineffective *733 assistance of counsel through appropriate post-conviction proceedings. Id.
¶ 9. In the instant case, the parties have not stipulated that the record is adequate for appellate review of the issue of ineffective assistance of counsel. We proceed to determine if the record "affirmatively shows ineffectiveness of constitutional dimensions." If this Court determines that the record affirmatively shows constitutional ineffectiveness, "then it should have been apparent to the presiding judge, who had a duty ... to declare a mistrial or order a new trial sua sponte." Colenburg v. State, 735 So.2d 1099, 1102(¶ 8) (Miss.Ct. App.1999). In other words, for this Court to reach the issue of ineffectiveness of counsel on Magee's direct appeal, the record must show that counsel's performance was so deficient that the trial court had a duty to declare a mistrial in order to prevent a mockery of justice. Id. (citing Parham v. State, 229 So.2d 582, 583 (Miss. 1969)).
¶ 10. This Court applies the two-part test from Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in reviewing claims of ineffective assistance of counsel. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). Under Strickland, the defendant bears the burden of proof that (1) counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. Id. This Court looks at the totality of the circumstances in determining whether counsel was effective. Id. There is a strong but rebuttable presumption that counsel's performance fell within the wide range of reasonable professional assistance. Id. The presumption may be rebutted with a showing that, but for counsel's deficient performance, a different result would have occurred. Leatherwood v. State, 473 So.2d 964, 968 (Miss.1985).
¶ 11. In reviewing this issue, we do not consider the extra-record documents which Magee has attached to his brief. Read, 430 So.2d at 841. The record does not affirmatively show that Magee was prejudiced by any deficient performance by substitute counsel. While Magee complains that he was prejudiced by counsel's failure to request a mental evaluation of Magee's competence to stand trial, the record shows that, on January 24, 2002, the trial court granted Magee's motion to have Magee examined "for the purpose of evaluating, (a) whether or not he has a factual as well as rational understanding of the nature and object of the legal proceedings against him, and has the ability to reasonably assist his attorney in the preparation of his defense...." This language paraphrased the standard for assessing competence to stand trial, which is "whether the defendant has `sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and `has a rational as well as factual understanding of the proceedings against him.'" Snow v. State, 800 So.2d 472, 489(¶ 61)(Miss.2001) (quoting Dusky v. U.S., 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). Thus, contrary to Magee's characterization of the proceedings below, substitute counsel moved for a mental evaluation of Magee's competence to stand trial and the motion was granted. The transcript shows that this mental evaluation was performed. Magee has utterly failed to show prejudice because the very omission of which he complains was, in fact, accomplished.
¶ 12. Magee also contends that his substitute counsel was deficient because he confused the need for a competency determination with Magee's insanity defense. Uniform Rule of Circuit and County Court Practice 9.06 prescribes the procedure for determining a defendant's competence to stand trial. Rule 9.06 provides that, if the trial court has a reasonable *734 ground to believe the defendant is incompetent to stand trial, the court must order a mental evaluation and conduct a hearing to determine competence. Magee avers that his counsel was confused because counsel filed a pre-trial motion to try Magee's defense of insanity separately from the question of whether Magee committed the acts constituting the crime of murder. Magee contends that his counsel's request to bifurcate his trial showed that counsel had confused the issue of sanity, which is usually determined in a single jury trial along with the other issues in the case, with the issue of competence, which is determined in a separate hearing by a judge. URCCC 9.06. Magee argues that, had his counsel recognized the procedural differences between sanity and competency, counsel would have requested a competency hearing or otherwise pursued the issue of Magee's competence to stand trial.
¶ 13. The record evinces that counsel's performance was reasonable. Counsel's motion to try separately the issues of insanity and the merits of the case was a defense strategy that has been used in other jurisdictions. See U.S. v. Duran, 96 F.3d 1495, 1499 (D.C.Cir.1996) (stating that, if the defendant has a merits-based defense and an insanity defense that are incompatible, and it appears likely that either defense will be adversely affected by a jury hearing evidence regarding the other, the district court should bifurcate the trial for a separate presentation of the two defenses); State v. Moses, 320 N.W.2d 581, 583 (Iowa 1982) (holding that the trial court correctly denied the defendant's motion for a bifurcated trial at which sanity would be tried separately); State v. Boyd, 167 W.Va. 385, 280 S.E.2d 669, 675 (1981) (stating that the right to a bifurcated trial lies within the sound discretion of the trial court). At a hearing, Magee's substitute counsel stated that he was pursuing a bifurcated trial because he was concerned that, if Magee's insanity defense was presented to the jury alongside the merits of the case, autopsy photographs and other evidence might prejudice Magee's insanity defense. It is clear to this Court that counsel's pursuit of a bifurcated trial for Magee was trial strategy and did not evince confusion on counsel's part. We cannot say that the record affirmatively shows that Magee's substitute trial counsel was constitutionally ineffective. We dismiss Magee's claim of ineffective assistance of counsel without prejudice to his ability to seek post-conviction relief on this ground.

II. THE TRIAL COURT HAD AN AFFIRMATIVE DUTY TO CONDUCT A COMPETENCY HEARING AND FIND MAGEE INCOMPETENT SUA SPONTE BECAUSE INDICATORS WERE PREVALENT TO SHOW MAGEE HAD MENTAL HEALTH PROBLEMS.
¶ 14. Magee argues that, though his attorney did not request a competency hearing, the trial court should have conducted a competency hearing sua sponte. Indeed, a defendant has a right to be tried only while competent and cannot waive his right to have the trial court determine his competency to stand trial. Pate v. Robinson, 383 U.S. 375, 377, 384, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Thus, "`[e]ven where the issue of competency to stand trial has not been raised by defense counsel, the trial judge has an ongoing responsibility to prevent the trial of an accused unable to assist in his own defense.'" Howard v. State, 701 So.2d 274, 280 (Miss.1997) (quoting Conner v. State, 632 So.2d 1239, 1248 (Miss.1993) (overruled on other grounds)). Uniform Rule of Circuit and County Court Practice 9.06 reflects this principal. The rule provides, in pertinent part:

*735 If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court.... After the examination, the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial.
The United States Supreme Court has held that a defendant is competent to stand trial if he has "`sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding'" and "`a rational as well as factual understanding of the proceedings against him.'" Snow, 800 So.2d at 489 (quoting Dusky, 362 U.S. at 402, 80 S.Ct. 788). Our supreme court has further refined the test for competency in Mississippi, holding that a competent defendant is one
(1) who is able to perceive and understand the nature of the proceedings; (2) who is able to rationally communicate with his attorney about the case; (3) who is able to recall relevant facts; (4) who is able to testify in his own defense if appropriate; and (5) whose ability to satisfy the foregoing criteria is commensurate with the severity and complexity of the case.
Howard, 701 So.2d at 280.
¶ 15. According to Rule 9.06, the trial court must order a mental evaluation and conduct a competency hearing if the court has a reasonable ground to believe the defendant is incompetent. On review of a trial court's decision to forego a competency hearing, this Court inquires whether the trial court had a reasonable ground believe the defendant was incompetent. Howard, 701 So.2d at 280. To determine whether the trial court had such reasonable ground, we apply the test enunciated in Lokos v. Capps, 625 F.2d 1258, 1261 (5th Cir.1980): "Did the trial judge receive information which, objectively considered, should reasonably have raised a doubt about defendant's competence and alerted him to the possibility that the defendant could neither understand the proceedings, nor rationally aid his attorney in his defense?" Howard, 701 So.2d at 281. Some information that has been considered probative of a defendant's competency are the defendant's demeanor during the proceedings and defense counsel's statements to the court that the defendant is unable to rationally consult with counsel or assist in his own defense. Id. at 283. A mental evaluation finding the defendant competent to stand trial may support the trial court's decision to forego a competency hearing. Conner, 632 So.2d at 1251.
¶ 16. Magee argues that the record evidence shows that the trial court had a reasonable ground to believe Magee was incompetent to stand trial and, therefore, the court should have conducted a competency hearing though none was requested by defense counsel. We review the pertinent record evidence. Magee's videotaped confession reveals that he appeared to understand the questions asked of him and was responsive and cooperative. At a motion hearing on May 3, 2001, Magee's first trial counsel informed the court that Magee had been treated by a psychiatrist, that he had been committed to the state hospital in the past, and that he was hearing voices while incarcerated at the Adult Detention Center. The court granted funds for a mental evaluation. There is no indication that the evaluation was conducted. On December 20, 2001, the defense noticed the state of Magee's intent to rely *736 on the insanity defense and to rely on the testimony of an expert witness to the effect that Magee had been insane at the time of the crime. On January 24, 2002, the court ordered that a mental evaluation be performed to assess Magee's competence and sanity at the time of the crime. The transcript indicates that the evaluation was performed at the state hospital on or about January 27, 2003.
¶ 17. On July 2, 2003, Magee filed a "Motion to Cease Administering Anti-Psychotic Drugs to the Defendant Within One Week Prior to Trial and Throughout Trial." Magee wished to support his insanity defense by having the jury observe his demeanor while unmedicated. Magee's attorney said that he did not believe Magee would pose a threat if unmedicated. The court granted the motion because it was unopposed by the State and there was no compelling reason that Magee be medicated at the trial. See Harrison v. State, 635 So.2d 894, 905 (Miss.1994) (citing Riggins v. Nevada, 504 U.S. 127, 135, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992)). Since Magee had attacked corrections officers while incarcerated and awaiting trial, the court ordered that Magee be restrained during the trial in a manner invisible to the jury and that extra security personnel be present in the courtroom. There is no indication that Magee was disruptive at the trial. When the trial court asked Magee if he understood that he was waiving his rights to testify in his own defense and to present his insanity defense, Magee replied, "yes," to each question.
¶ 18. Additionally, the transcript indicates that the court and parties possessed a report of the results of Magee's January 27, 2003 competency evaluation at the state hospital. The results were based on an examination of Magee including psychological testing. Neither the report nor the results of the examination are part of the trial record. Therefore, this Court does not have all of the information that was before the lower court that bore on Magee's competence to stand trial. When, as in the instant case, the trial court does not make express findings on its decision to forego a competency hearing, this Court "must assume that the trial court objectively considered all the facts and circumstances, including those which are not available to this Court, which bore upon [the defendant's] competence to stand trial." Conner, 632 So.2d at 1251. The state hospital's conclusions regarding Magee's competence to stand trial, rendered after psychological testing, were likely highly probative of Magee's competence to stand trial. We must assume that the mental evaluation, considered in conjunction with the other facts and circumstances recited above, dispelled any reasonable doubt in the lower court's mind that Magee could be incompetent to stand trial. On this record, we cannot say that the lower court had a reasonable ground to conduct a competency hearing.
¶ 19. Magee also argues that the trial court's grant of funds for a mental evaluation in May 2001 amounted to a finding of a reasonable ground to believe that Magee was incompetent to stand trial. Therefore, he argues, Rule 9.06 required that Magee be given a competency hearing. Rule 9.06 does state that the court, upon a reasonable ground to believe the defendant is incompetent, shall order a mental evaluation and conduct a competency hearing. But, the trial court may order a mental examination of the defendant even without a reasonable ground to believe the defendant is incompetent. Mississippi Code Annotated § 99-13-11 (Rev. 2000) provides:
In any criminal action in the circuit court in which the mental condition of a person indicted for a felony is in question, the court or judge in vacation on *737 motion duly made by the defendant, the district attorney or on motion of the court or judge, may order such person to submit to a mental examination by a competent psychiatrist or psychologist selected by the court to determine his ability to make a defense;....
Thus, under section 99-13-11, a circuit court may order a mental evaluation of the defendant even without a reasonable ground to believe the defendant is incompetent. The issue of the defendant's mental condition need only be in question to enable the court to order an evaluation. The trial court's order of a mental evaluation for Magee was not a finding of reasonable ground entitling Magee to a competency hearing.
¶ 20. This conclusion is in accordance with Howard and Conner. In those cases, the trial court had ordered the defendant evaluated for competency, and the supreme court reviewed the mental evaluation along with all the other pertinent evidence to determine whether the trial court had a reasonable ground to conduct a competency hearing. Howard, 701 So.2d at 281; Conner, 632 So.2d at 1251. The Howard and Conner courts did not hold that the defendant was entitled to a competency hearing simply because the court had ordered a mental evaluation. This issue is without merit.

III. MISSISSIPPI CODE ANNOTATED SECTION 47-5-139 VIOLATES FORTY YEAR OLD MAGEE'S DUE PROCESS AND EQUAL PROTECTION RIGHTS BY SUBJECTING HIM TO GREATER PUNISHMENT FOR HIS CRIME THAN OTHERS SENTENCED TO LIFE AT AGE FIFTY OR OLDER, AND BY DENYING HIM ACCESS TO THE COURTS SIMPLY BECAUSE OF HIS AGE.
¶ 21. Magee was sentenced to life in the custody of the Mississippi Department of Corrections. According to Mississippi Code Annotated § 47-5-139 (Rev. 2004),
(1) An inmate shall not be eligible for the earned time allowance if: (a) the inmate was sentenced to life imprisonment; but an inmate, except an inmate sentenced to life imprisonment for capital murder, who has reached the age of sixty-five (65) or older and who has served at least fifteen (15) years may petition the sentencing court for conditional release;
Magee argues that section 47-5-139(1)(a) is unconstitutional because it violates his rights of due process and equal protection by basing eligibility for the earned time allowance on an age-based distinction. He argues that, because he was forty at the time of the filing of his appellate brief, he would have to serve twenty-five years before reaching age sixty-five and being able to petition the sentencing court for conditional release, while someone who was fifty at the time of his conviction would only have to serve fifteen years before being able to petition. He argues that section 47-5-139(1)(a) effectively lengthens his sentence.
¶ 22. The Mississippi Supreme Court addressed this argument in Martin v. State, 871 So.2d 693, 702(¶ 33) (Miss. 2004). Martin was sentenced to life imprisonment and, like Magee, argued that section 47-5-139(1)(a) made an unconstitutional age-based distinction that lengthened his sentence. Id. at (¶ 31). The court held that this issue was not ripe for review on Martin's direct appeal from his criminal conviction because Martin was not incarcerated pursuant to section 47-5-139(a)(1). Id. at (¶ 33). The court stated that the proper avenue for an attack on this statute would be in a motion for post-conviction *738 relief. Id. Further, the court found that section 47-5-139, by specifying criteria for assessing whether a prisoner could be considered for earned time allowance, did not violate Martin's right of due process or equal protection. Id. Based on the clear holding of Martin, Magee's argument is without merit.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.